**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN S. WALKER, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 07-5131 (SDW) |
| | : | |
| v. | : | |
| | : | |
| BERNARD J. GOODWIN, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |

**APPEARANCES**:

      JOHN S. WALKER, Petitioner Pro Se
      Special Treatment Unit
      Kearny, New Jersey  07032

**Susan D. Wigenton**, District Judge

Petitioner JOHN S. WALKER (hereinafter "Petitioner"), who is currently confined at the Special Treatment Unit, Kearny, New Jersey, filed a document, titled to be a petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 (hereinafter "Petition"), together with his application to proceed in forma pauperis (hereinafter, collectively, "Application").  For the reasons set forth below, the Court allows Petitioner to proceed in this action in forma pauperis, severs this matter into two independent legal actions (each entertaining different parts of the Petition), and dismisses the Petition for failure to meet the requirements of Habeas Rule 2, as time barred and as unexhausted.

## BACKGROUND

On October 25, 2007, the Clerk of the Court received Petitioner's Application.  The Petition part of the Application is a seven-page document consisting of 25 paragraphs, typed single-space, signed by Petitioner but undated.  Petitioner's accompanying application to proceed in forma pauperis is a two page document, signed and dated as of October 22, 2007.

The seven-page Petition opens with an explanation that Petitioner is being involuntarily civilly committed, pursuant to an order issued by the Superior Court of New Jersey, Law Division at Middlesex County, under the Sexually Violent Predator Act (hereinafter "SVPA"), without specification as to what particular order Petitioner has in mind and when that order was issued.  See Pet. ¶ 1.

It appears that Petitioner's initial final order of civil commitment was issued on October 2, 2001.  See id. ¶ 7.  After Petitioner appealed this decision to the Superior Court of New Jersey, Appellate Division, the Appellate Division: (a) remanded Petitioner's case to the Law Division for de novo hearing, and (b) following the Law Division's ensuing final order of civil commitment issued on September 24, 2002, affirmed that final order on July 16, 2004.  See id. ¶¶ 8-15.  The Supreme Court of New Jersey denied Petitioner certification on December 18, 2004, see id. ¶ 17, and it appears that Petitioner did not seek any collateral review of his civil commitment  in the state courts.  See generally, Pet.

After elaborating on the above-recited information in the first 18 paragraphs of his Petition, Petitioner provided the Court with three less enlightening paragraphs which, nonetheless, appear to be the crux of his Petition.  Specifically, Paragraph 19 informs this Court that, on February 2006, Petitioner was scheduled to appear in front of a state judge for his six-

2

month review hearing, but the hearing did not take place for the reasons unknown to Petitioner.

See id. ¶ 19. Eight months later, on October 20, 2006, Petitioner appeared for a hearing before

the same state judge who was scheduled to preside over Petitioner's February 2006 hearing.  See

id. ¶ 20.  According to Petitioner,

> the court[,] after reviewing [P]etitioner's treatment progress[,] advised [him] that
> it would consider reviewing [his] release plan if [P]etitioner . . . stipulated to a six
> month treatment commitment plan and forgo a full review hearing.  Petitioner's
> counsel . . . advised [P]etitioner that his cooperation would assure his release.
> Bas[ing his decision] on the advi[c]e of [his]  counsel, [P]etitioner agreed to the
> six month stipulation ([which he calls his] "plea" [agreement]) term.  As a result, .
> . . no notice of appeal was filed [with] the Appellate Division [and no certification
> was sought from] the . . . Supreme Court [of New Jersey].

Id. ¶ 20.  Following this statement, the Petition informs this Court that, on an unstated day in

February of 2007,  "Petitioner was scheduled to appear before [the same judge who took his

"plea"] for a hearing [as to his] conditional release . . . .  However, no hearing was held" for the

reasons unknown to the Petitioner.[1]  Id. ¶ 21.

    After so informing this Court, the Petition proceeds to state Petitioner's challenges.  The

first one, designated as paragraph 22, reads as follows:

> Ground One.  Petitioner Submits that [his] Counsel's Erroneous Advice
> Instructing Petitioner to Forfeit His Right to a Full Review Hearing and Appeal
> Process Violated his Six[th] Amendment Right to Effective Assistance of Counsel
> and Prohibited Him from Filing a Timely Habeas Corpus.

Id. ¶ 22.

---

[1] While it is not entirely clear to this Court why Petitioner's six-month treatment results
were to be reviewed in four months or so after the October 20, 2006 hearing (since there are four
months from mid-October to mid-February), the Court operates on the presumption that the
February review, if actually scheduled, was intended to be "in anticipation" of the outcome of
Pertitioner's six-month treatment.

This Ground One challenge is followed Petitioner's claim that his counsel "coerced him into forfeiting his statutory right to a full civil commitment review hearing" and page-and-a-half discussion of Petitioner's understanding of the Sixth Amendment law.  Id. at 3-4.

Next, Petitioner states his "Ground Two [which is a claim that] the Prior Determination that Petitioner [Was] Not a Compulsive Sex Offender Collaterally Estoppels [sic.] the State from Committing Him Under the SVPA."  Id. ¶ 23.  This allegation is followed by two pages of Petitioner's discussion of SVPA law and suggests that Petitioner is re-challenging his order of civil commitment, with respect to which the Supreme Court of New Jersey denied Petitioner certification on December 18, 2004.  The argument ends with Petitioner's assertions that: (a) "[t]he Office of the Public Advocate of New Jersey . . . has failed to file an appeal [apparently, of Petitioner's final order of commitment] for the last three (3) years," id. ¶ 25; and (b) "because [P]etitioner has previously exhausted all [these] issues . . . , this Court should relax any time bar set[]forth by the Code."

**DISCUSSION**

I.    **Habeas Prohibition Against Joint Challenges to Different Judgements**

Habeas Rule 2 provides that a petitioner who seeks relief from different judgments rendered by state courts must file a separate petition covering each separate judgment.  See Habeas Rule 2(e).  Here, it is apparent that Petitioner is bundling together his: (1) challenges with respect to his order of commitment (issued by the Law Division on September 24, 2002, affirmed by the Appellate Division on July 16, 2004, and with respect to which certification was denied on December 18, 2004, hereinafter "Order of Commitment"); and (2) his allegations about the

4

judgement ensuing from Petitioner's progress review hearing on October 20, 2006, and/or about the lack of a judgement in February of 2007. However, under Habeas Rule 2(e), Petitioner has to file separate challenges as to each separate judgement.

Therefore, this Court would construe the instant Petition as Petitioner's challenge with respect to his Order of Commitment. The Court will sever Petitioner's allegations about the judgement that ensued from his progress review hearing on October 20, 2006 (or about the lack of such judgement in February of 2007), and will direct the Clerk to open a separate and new § 2254 matter on the basis of these allegations.[2]

This Opinion and accompanying Order will be deemed applicable to and filed in that new matter.

II.   **Petitioner's Challenges as to His Final Order of Civil Commitment**

      **A.   Petitioner's Challenges Are Time Barred**

Prior to examining the part of the Petition challenging Petitioner's Order of Commitment on its merits, this Court shall determine whether this challenge is time-barred. See Long v. Wilson, 393 F.3d 390, 402-03 (3d Cir. 2004) (stating that a court may examine an application for a writ of habeas corpus sua sponte and citing Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002);

_____

[2] This Court can neither determine from the face of the Petition if Petitioner wishes to challenge both the judgement that ensued from his progress review hearing on October 20, 2006, *and* the lack of such judgement in February of 2007, or only one of these events and, in the latter scenario, which event the Petitioner has in mind. However, while pursuant to Habeas Rule 2(e), Petitioner's allegations as to his October 2006 "plea agreement" should be severed in a legal action distinct and separate from that addressing Petitioner's allegations as to the cancellation of his February 2007 hearing, the Court does not find it prudent to create *two* individual matters addressing these two distinct groups of allegations, since the Petition indicates that both groups of allegations are subject to dismissal for failure to exhaust state remedies.

Herbst v. Cook, 260 F.3d 1039, 1042 & n.3 (9th Cir. 2001); Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000); Kiser v. Johnson, 163 F.3d 326, 328-29 (5th Cir. 1999)).

On April 24, 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  In this case, the applicable limitations provision is § 2244(d)(1)(A). With respect to Petitioner's judgment of civil commitment, the Supreme Court of New Jersey denied certification on December 18, 2004.  On March 17, 2005 (ninety days after December 18, 2004), Petitioner's time to seek certiorari from the United States Supreme Court expired, the Order of Commitment became final, and Petitioner's one-year period of limitations began running for the purposes of the AEDPA.  Without any applicable tolling, Petitioner's period of limitations expired one year later, that is, on March 16, 2006, more than a year and a half prior to Petitioner's filing of the instant Petition.

The statute of limitations under § 2244 is subject to tolling exception(s), that is, statutory tolling and, perhaps, equitable tolling.[3]  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).  Section 2244(d)(2) requires statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2) (emphasis supplied).   Presuming that the AEDPA statute of limitations is subject to equitable tolling, "a litigant seeking equitable tolling [would] bear[] the

---

[3]

Pace v. DiGuglielmo, 544 U.S. 408 (2005) ("We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations").

6

burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408 (2005).  The Third Circuit instructed that equitable tolling could be appropriate only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005).  Mere excusable neglect is not sufficient.[4] See id.; see also Merritt, 326 F.3d at 168; Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Extraordinary circumstances have been found where (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim.  See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005). Moreover, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

_____

    [4] Claim of "ineffective assistance of counsel" does not provide a basis for equitable tolling.  See Pace, 544 U.S. at 418, and n.9 (dismissing the "ineffective assistance of counsel" excuse offered by the petitioner who asserted "that he received ineffective assistance of counsel at 'all levels of representation'").

Here, the statutory tolling appears to be clearly inapplicable, since Petitioner did not suggest that he sought any collateral review of the Order of Commitment with the state courts. However, Petitioner appears to assert two grounds for equitable tolling: (1) one being an allegation that the Office of Public Advocate failed to file an application for collateral review of Petitioner's Order of Commitment; and (2) another one being the claim that Petitioner's challenge to his Order of Commitment should be excused from the limitations imposed by the AEDPA because Petitioner exhausted the "collateral estoppel" issue included in his Petition during Petitioner's direct appeal to the Appellate Division and in his application for certification to the Supreme Court of New Jersey.  Yet, neither assertion provides this Court with a valid basis to grant Petitioner equitable tolling.

Petitioner's first assertion appears to be factually and legally irrelevant.  Not only it is well established that collateral review "counsel's failure to proceed with alacrity cannot qualify as valid grounds for equitable tolling," Williams v. Ricci, 2006 U.S. Dist. LEXIS 91259, at *2 (D.N.J. Dec. 5, 2006) (relying on Pace, 544 U.S. at 418), in this case, Petitioner had no need to seek collateral review with respect to the  "collateral estoppel" issue that he, allegedly, duly exhausted during his direct appeal.  In other words, Petitioner could have filed his § 2254 challenge with this Court asserting unconstitutionality of his civil commitment between March 17, 2005, and March 16, 2006.

Petitioner appears to be well aware of this shortcoming, since his Petition expressly requests equitable tolling only on the basis of the fact that Petitioner exhausted  the "collateral estoppel" issue in the state courts.  However, the requirement of exhaustion exists separately and independently from that of timeliness, and satisfaction of one cannot be utilized as a substitute

for another.  In fact, the very purpose of the statutory tolling provision discussed supra is to harmonize the existence of these two independent requirements.  See Rouse v. Iowa, 110 F. Supp. 2d 1117, 2000 U.S. Dist. LEXIS 11249 (N.D. Iowa 2000) (citing Mills v. Norris, 187 F.3d 881, 884 (8th Cir. 1999)).  Since the Petition fails to allege facts sufficient to excuse the failure to file timely challenges to Petitioner's order of civil commitment, this part of the Petition will be dismissed with prejudice as untimely.

### B.	Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In Slack v. McDaniel, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because jurists of reason would not find it debatable that dismissal of the part of the Petition challenging Petitioner's final order of civil commitment as untimely is correct.

9

**III.**    **Petitioner's Allegations as to His Progress Review Hearing (of Lack Thereof)**

    **A.**    **Standard of Review**

Section 2254(a) of Title 28 of the United States Code grants federal district courts subject matter jurisdiction to entertain a claim that a state prisoner is in custody in violation of the Constitution, laws or treaties of the United States.  Section 2254(a) provides, in pertinent part:

> . . . a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 2(c)).  The petition must "specify all the grounds for relief which are available to the petitioner," and set forth "the facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing Section 2254 Cases. A federal district court must dismiss a habeas corpus petition, summarily or otherwise, if it does not assert a constitutional violation.  Siers v. Ryan, 773 F.2d 37, 45 (3rd Cir. 1985), cert. denied, 490 U.S. 1025 (1989); Rule 4 of the Rules Governing Section 2254 Cases.[5]  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.  It is unnecessary in such

---

[5] Rule 4(c) provides:  "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  The Advisory Committee Notes to Rule 4 emphasize that "'notice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" (citing Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970)).

a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

Moreover, in reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).  Nor may the Court re-characterize a ground asserted under state law into a federal constitutional claim.  See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights). Moreover, where a petitioner asserts that he was denied "fair" proceedings,  such a claim does not, without more, assert a federal constitutional claim.  See, e.g., Duncan v. Henry, 513 U.S. 364 (1995); Keller v. Larkins, 251 F.3d 408, 413-415 (3d Cir. 2001).  For example, in Duncan v.

11

Henry, the Supreme Court held that a claim of "miscarriage of justice" does not qualify as a

federal constitutional claim.  The Supreme Court cautioned:  "If a habeas petitioner wishes to

claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed

by the Fourteenth Amendment, he must say so . . ."  Duncan, 513 U.S. at 366.  Significantly,

relying on Duncan v. Henry, the Third Circuit ruled in Keller v. Larkins, 251 F.3d at 413-415,

that denial of a claim asserting lack of "fair trial" is proper because such claim does not state a

federal constitutional violation:

> [A petitioner does] not invoke the federal due process guarantee [if the petitioner
> merely] claim[s] that admission of the evidence produced a "miscarriage of
> justice" [or] argues that the [trial process] denied him a "fair trial."  Since the
> Supreme Court found the former language insufficient to give fair notice of a
> federal due process claim, we are hesitant to attach greater significance to the
> passing reference to the concept of a "fair trial" on which [the petitioner's]
> argument rests.

Keller, 252 F.3d at 415; see also Baldwin v. Reese, 541 U.S. 27, 33 (2004) (claim of "ineffective

assistance of appellate counsel," which "provides no citation of any case that might have alerted

the court to the alleged federal nature of the claim" does not assert a federal claim).


### B.        Petitioner's Allegations Do Not Qualify As a Federal Claim

The clearly comprehensible part of Petitioner's allegations as to his progress review

hearings or the lack thereof could be reduced to a statement that Petitioner is unhappy about the

fact of his civil commitment confinement.  The rest of his allegations, set forth in ¶¶ 19-22, are

ambiguous and cannot be reduced to a claim of denial of a federal right.

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v.

Scott, 512 U.S. 849, 856 (1994).  Habeas Rule 2(c) requires a § 2254 petition to "specify all the

12

grounds for relief available to the petitioner," "state the facts supporting each ground," "state the

relief requested," be printed, typewritten, or legibly handwritten, and be signed under penalty of

perjury.  28 U.S.C. § 2254 Rule 2(c).  Habeas Rule 4 requires a judge to <u>sua</u> <u>sponte</u> dismiss a §

2254 petition without ordering a responsive pleading "[i]f it plainly appears from the petition and

any attached exhibits that the petitioner is not entitled to relief in the district court."  28 U.S.C. §

2254 Rule 4.  Thus, "[f]ederal courts are authorized to dismiss summarily any habeas petition

that appears legally insufficient on its face."  <u>McFarland</u>, 512 U.S. at 856.  Dismissal without the

filing of an answer or the State court record has been found warranted when "it appears on the

face of the petition that petitioner is not entitled to relief."  <u>Siers v. Ryan</u>, 773 F.2d 37, 45 (3d

Cir. 1985), <u>cert. denied</u>, 490 U.S. 1025 (1989); <u>see also</u> <u>United States v. Thomas</u>, 221 F.3d 430,

437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of

summarily without further investigation by the district court); <u>United States v. Dawson</u>, 857 F. 2d

923, 928 (3d Cir. 1988) (same).  The Supreme Court recently explained the pleading

requirements under the Habeas Rules as follows:

> Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only
> provide "fair notice of what the plaintiff's claim is, and the grounds upon which it
> rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 . . . (1957).  Habeas Rule 2(c) is more
> demanding.  It provides that the petition must "specify all the grounds for relief
> available to the petitioner" and "state the facts supporting each ground."  <u>See also</u>
> Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p.
> 469 ("In the past, petitions have frequently contained mere conclusions of law,
> unsupported by any facts.  [But] it is the relationship of the facts to the claim
> asserted that is important . . . .");  Advisory Committee's Note on Habeas Corpus
> Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is
> expected to state facts that point to a real possibility of constitutional error."
> (internal quotation marks omitted)) . . . .  A prime purpose of Rule 2(c)'s demand
> that habeas petitioners plead with particularity is to assist the district court in
> determining whether the State should be ordered to "show cause why the writ
> should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly

> appears from the petition . . . that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition."  Rule 5(b).

Mayle v. Felix, 545 U.S. 644, 655 (2005).  Here, Petitioner's allegations, short of his ambiguous reference to the Sixth Amendment, do not appear to state any claim, moreover a federal claim, they merely express Petitioner's disappointment with his current situation.[6]  While the Court recognizes Petitioner's emotions, that realization changes nothing about the fact that Petitioner's allegations do not meet the pleading requirement.  Accord Keller v. Larkins, 408, 413-415 (3d Cir. 2001) (concluding that a statement about "denial of a 'fair trial'" does not assert a federal constitutional claim) (relying on Duncan v. Henry, 513 U.S. 364 (1995) ).


**C.      Exhaustion of State Remedies**

Even if Petitioner's allegation with respect to his October 2006 and/or February 2007 hearings would be clear and, hypothetically, amounted to a federal claim, these allegations would have to be dismissed as unexhausted.  Exhaustion of state remedies has been required for more than a century, since the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886).  The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and more recently was the subject of significant revisions in the AEDPA, Pub. L. 104-132, 110 Stat. 1214, 1217 (April 24, 1996).  The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism.  See Granberry v. Greer, 481 U.S. 129

---

[6] The Court notes Petitioner's reference to the Sixth Amendment and discusses this reference infra.

(1987); Rose, 455 U.S. at 516-18. Exhaustion also has the practical effect of permitting

development of a complete factual record in state court, to aid the federal courts in their review.[7]

See Rose, 455 U.S. at 519.  In fact, Section 2254(b) provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that
> -
> (A)     the applicant has exhausted the remedies available in the courts of the
>          State; or
> (B)
> > (i)     there is an absence of available State corrective process; or
> > (ii)    circumstances exist that render such process ineffective to protect
> >          the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B); see also Henderson v. Frank, 155 F.3d 159, 164 (3d Cir.

1998); Lambert, 134 F.3d at 513; Toulson v. Beyer, 987 F.2d 984, 987-89 (3d Cir. 1993).

Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the

remedies available in the courts of the State, within the meaning of this section, if he has the right

under the law of the State to raise, by any available procedure, the question presented."  28

U.S.C. § 2254(c).

Section 2254(b)(1)(B)(i) excuses exhaustion where there is "an absence of available State

corrective process."  28 U.S.C. § 2254(b)(1)(B)(i); see also Duckworth v. Serrano, 454 U.S. 1, 3

(1981) (per curiam).  A petition containing claims which are unexhausted but procedurally barred

will not be dismissed as unexhausted.  "Although the unexhausted claims may not have been

---

[7] The exhaustion doctrine is a "total" exhaustion rule.  Therefore, a district court may not
grant a writ of habeas corpus under § 2254 unless the petitioner has exhausted state court
remedies for all grounds presented in the petition at every level of the State court or such process
is unavailable or ineffective to protect the petitioner's rights.  See 28 U.S.C. § 2254(b)(1)(A),
(b)(1)(B); Rhines v. Weber, 544 U.S. 269 (2005); Lambert v. Blackwell, 134 F.3d 506, 513 (3d
Cir. 1997); see also Duckworth v. Serrano, 454 U.S. 1 (1981).

presented to the highest state court, exhaustion is not possible because the state court would find the claims procedurally defaulted." Toulson, 987 F.2d at 987; accord Coleman v. Thompson, 501 U.S. 722, 730-32 & n.1 (1991); Harris v. Reed, 489 U.S. 255 (1989).[8] "If a claim has not been fairly presented to the state courts but state law clearly forecloses review . . . exhaustion is excused." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (citations omitted).

In determining whether state court review is "available" under § 2254(b)(1)(B) and (c), this Court must "turn [its] attention to the actuality that the state courts would refuse to entertain" the petitioner's federal claims. Lambert, 134 F.3d at 516; see also Christy, 115 F.3d at 207. Most importantly, "unless a state court decision exists indicating that a habeas petitioner is clearly precluded from state court relief, the federal habeas claim should be dismissed for nonexhaustion, even if it appears unlikely that the state will address the merits of the petitioner's claim." Lambert, 134 F.3d at 517.

For example, the petitioner in Toulson v. Beyer, 987 F.2d 984 (3d Cir. 1993), was a New Jersey prisoner who filed a § 2254 petition in the District Court for the District of New Jersey challenging his state conviction and sentence on five grounds. The Appellate Division of the New Jersey Superior Court had affirmed his conviction; the New Jersey Supreme Court had

---

[8] While it excuses exhaustion, the doctrine of procedural default is a double-edged sword. When a petitioner's failure to comply with a state procedural rule has prevented the state courts from reaching the merits of his federal claims, federal habeas review of those claims is ordinarily barred as petitioner has procedurally defaulted his claims. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). Reliance by the last state court to consider the federal claim on an "adequate and independent finding of procedural default will bar federal habeas review of [that] federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris, 489 U.S. at 262 (citations and internal quotation marks omitted); accord Coleman, 501 U.S. at 750; Cabrera v. Barbo, 175 F.3d 307, 312-14 (3d Cir. 1999); Sistrunk v. Vaughn, 96 F.3d 666, 673 (3d Cir. 1996).

denied his petition for certification; and the trial court had denied his motion to reconsider the sentence and his motion for post-conviction relief.  Toulson had not presented three of his § 2254 grounds to the New Jersey Supreme Court in his petition for certification.  The district court held that the claims were procedurally barred by N. J. Ct. R. 3:22-4 (barring consideration of grounds not raised in prior proceedings), in that Toulson had not raised them in his petition for certification to the New Jersey Supreme Court.  The Third Circuit reversed and remanded, observing that Rule 3:22-4(c) dissolves the procedural bar where denial of relief would be contrary to the Constitution of the United States or the State of New Jersey, and that other rules presenting potential procedural bars were likewise subject to relaxation.[9]  The Third Circuit instructed the district court to dismiss the petition without prejudice for failure to exhaust "[b]ecause no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default."  Toulson, 987 F.2d at 989.

In contrast, in Cabrera v. Barbo, 175 F.3d 307 (3d Cir. 1999), the Third Circuit affirmed dismissal of claims raised in a New Jersey prisoner's § 2254 petition as procedurally defaulted after a New Jersey court had in fact refused to consider the petitioner's federal claims because they were procedurally barred by N.J. Ct. R. 3:22-4.  Under those circumstances, the Third Circuit observed that exhaustion was unavailable.  However, because New Jersey's rejection of

---

[9] New Jersey Court Rule 3:22-12, which poses a five-year limitation period for the filing of post-conviction relief petitions, Rule 3:22-4, which bars any ground for relief not raised in a prior post-conviction relief proceeding, and Rule 3:22-5, which provides that a prior adjudication upon the merits of any ground for relief is conclusive, are subject to relaxation.  See State v. Preciose, 129 N.J. 451, 454, (1992); State v. Mitchell, 126 N.J. 565 (1992); State v. Johns, 111 N.J. Super 574, 576 (App. Div. 1970).

Cabrera's claims was based on an adequate and independent state ground, the petitioner had procedurally defaulted the claims.  See Cabrera, 175 F.3d at 312-314.

In this case, no New Jersey court has determined that Petitioner is procedurally barred from raising the four claims asserted in the § 2254 Petition.  Failure to exhaust is therefore not excused under § 2254(b)(1)(B)(i).

Failure to exhaust may also be excused where "circumstances exist that render [State corrective] process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(ii).  State corrective process is ineffective where  "'state remedies are inadequate or fail to afford a full and fair adjudication of the federal contentions raised, or where exhaustion in state court would be futile.'"  Lambert, 134 F.3d at 516 (quoting Christy v. Horn, 115 F.3d 201, 207 (3d Cir. 1997)); see also Gibson, 805 F.2d at 138.  Petitioner's failure to exhaust is not excused under this provision, however, because New Jersey's appellate review procedures are not inadequate to adjudicate his federal claims.

Since Petitioner: (a) merely states that he, on his own, elected not to file a notice of appeal with respect to his October 2006 "plea agreement," even though he now asserts that the "plea agreement" was obtained through unconstitutional means; and (b) leaves the Court to hypothesize that, in addition, he elected not to file a state action with respect to cancellation of his February 2007 hearing, Petitioner's allegations as to his October 2006 "plea agreement" and cancellation of his February 2007 hearing will be dismissed without prejudice for failure to exhaust state remedies.[10]

---

[10] This Court's dismissal of these allegations without prejudice for failure to exhaust state remedies should not be construed as this Court's opinion as to substantive validity or invalidity of
(continued...)

### D.   Petitioner's Sixth Amendment Reference Is Not a Federal Claim

Petitioner's mentioning of the Sixth Amendment does not appear to be a federal claim since Petitioner merely asserts his disappointment with his counsel's advice.  See Pet. ¶ 20. However, § 2254  is not a provision aiming to challenge the prudence of a legal advice, rather this habeas statute is intended to remedy a judicial or governmental determination improperly obtained on the basis of alleged ineffective assistance of counsel.  See 28 U.S.C. § 2254.

Here, the challenge legal advice (rendered during Petitioner's October 2006 hearing) appears to be "factually divorced" from the challenged legal determination, namely, the decision not to hold Petitioner's February 2007 hearing.  Strikingly enough, Petitioner does not assert that the judicial determination reached as a result of his October 2006 hearing was deficient in any way.  Instead, he alleges that: (a) he grew disillusioned by the outcome of his October 2006 hearing when, four months later, Petitioner was not provided with his hearing scheduled for February of 2007;[11] and (b) had he been given a hearing in February of 2007 but denied release, he would be disappointed with the outcome of February 2007 hearing, not that of October 2006.

---

[10](...continued)
potential challenges that Petitioner might raise with respect to his October 2006 "plea agreement" and cancellation of his scheduled February 2007 hearing, regardless of whether these potential challenges present matters unaddressed in the instant Petition or vaguely touched upon by Petitioner's instant allegations.

[11]  Alternatively, Petitioner asserts an "injury" of forfeiting his opportunity to obtain what *might* have been a favorable appellate decision reversing an unfavorable determination that *might* have been reached by the Law Division in the event he would had have taken the full hearing. However, this "injury" appears to be: (a) wholly anomalous, since Petitioner claims being injured by *not* getting an *unfavorable* decision from the Law Division; and/or (a) purely speculative, since Petitioner's claim is based on his unsubstantiated belief that an unfavorable decision from the Law Division would *necessarily be reversed* in Petitioner's favor by either the Appellate Division or by the Supreme Court of New Jersey.

If so, it appears that Petitioner's challenge should be based on the judicial or governmental decision to cancel his hearing in 2007; such claim cannot be construed as a challenge to the outcome of his October 2006 hearing where his counsel played a role.  Petitioner, however, conflates the decision reached as a result of October 2006 hearing with that cancelling his February 2007 hearing, and challenges the latter on the basis of the legal advice obtained during the former, in violation of Habeas Rule 2(e), discussed <u>supra</u>, which prohibits joint challenges to different judgements.[12]

Moreover, even if this Court is to hypothesize that Petitioner's vague references to the Sixth Amendment amount to a federal claim, the allegations appear to be factually baseless.[13]

---

[12]  Petitioner tries to overcome this logical gap by alleging that, during his October 2006 hearing, his counsel "advised [him] that his cooperation would assure his release," i.e., by suggesting that the state court holding his February 2007 hearing would reach a decision favorable to Petitioner.  Petitioner, however, does not indicate that his counsel offered him a "plea bargain" on behalf of either the State (or accepted "plea bargain" on behalf of the judge presiding over the October 20, 2006, hearing), nor does he allege that his counsel ever represented to him having the power to  offer such a guarantee on behalf of the State or to accept the "plea bargain" on behalf of the state judge.  Petitioner merely states that, during the October 2006 hearing, his counsel offered her opinion that his cooperation *was likely* to increase his chances to obtain a favorable review in the future.  However, such advice does not amount to a violation of Petitioner's Sixth Amendment rights merely because, in retrospect, Petitioner concluded that he could have been better off had he not adopted his counsel's opinion.  "[T]he fact that Petitioner's counsel offered Petitioner a proper and well-grounded advice . . . does not--and cannot--mean 'that counsel's representation fell below an objective standard of reasonableness.'"  <u>Smith v. Cathel</u>, 2006 U.S. Dist. LEXIS 57287, at *19 (D.N.J. Aug. 15, 2006) (quiting <u>Strickland</u>, 466 U.S. at 687-88); <u>see also</u> <u>United States v. Soto</u>, 159 F. Supp. 2d 39, 43 (E.D. Pa. 2001) ("[T]he mere fact that [counsel's] tactic might in retrospect appear unsuccessful does not necessarily indicate that it was unreasonable") (citing <u>Strickland</u>, 466 U.S. at 689).

[13]  <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 515 (3d Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

Petitioner asserts that his counsel's advice "prohibited him from filing a timely habeas corpus" petition. Pet. ¶ 20. However, Petitioner's rights to file a habeas application were not affected by his counsel's advice. The judicial decision reached by the Law Division as a result of Petitioner's October 20, 2006, hearing became final when Petitioner's time to appeal the outcome of that hearing to the Appellate Division expired, that is, 45 days after the Law Division's ruling was entered. See N.J. Ct. R. 2:4-1(a). Thus, even if this Court is to presume that the decision at issue was actually entered on October 20, 2006, Petitioner's statute of limitations for the purposes of this Court's review did not start running until December 4, 2006, and could not expire prior to December 3, 2007. Therefore, Petitioner's filing of the instant Petition on October 22, 2007, was timely for the purposes of his challenges as to the outcome of his October 20, 2006, hearing.[14] A fortuori, Petitioner's AEDPA period of limitation to challenge the decision cancelling his February 2007 hearing could not expire by the time of Petitioner's filing of the instant Petition. It follows that Petitioner's counsel, even if she actually wanted to prevent Petitioner from filing a timely habeas corpus application, as Petitioner alleges, did not succeed.[15] Consequently, even if Petitioner's mentioning of his Sixth Amendment rights could, hypothetically, amount to a federal claim, that claim would be factually baseless and, thus, has to be dismissed with prejudice.

---

[14]

Had Petitioner appealed his "plea bargain" during that year to the state courts, or sought state courts' collateral review of his "plea bargain," his AEDPA period of limitation would be triggered later or statutorily tolled.

[15]

Petitioner does not explain how his counsel went about "prohibiting" him from filing a timely habeas corpus petition. See generally, Pet.

### E.      Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. Here, jurists of reason would not find the Court's procedural disposition of Petitioner's allegations as to his October 2006 "plea agreement" or Petitioner's allegations as to the cancellation of his February 2007 hearing debatable. Accordingly, no certificate of appealability will issue with respect to these allegations.[16]

---

[16] Moreover, with respect to Petitioner's ambiguous mentioning of his Sixth Amendment rights, issuance of certificate of appealability would be equally unwarranted even if the Court hypothesized that these mentioning qualified as a federal claim. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of Petitioner's mentioning of his Sixth Amendment rights demonstrates that he failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, the Court declines to issue a certificate of appealability pursuant to

(continued...)

## CONCLUSION

For the foregoing reasons, this Court finds that Petitioner's challenges as to his Order of Commitment are time barred, and these allegations will be dismissed with prejudice for failure to meet the statute of limitations requirement and to allege facts sufficient to excuse untimeliness of Petitioner's challenges. No certificate of appealability will issue. Petitioner's allegations as to his October 2006 "plea agreement" and/or Petitioner's allegations as to the cancellation of his February 2007 appear to fail to state a federal claim and, in addition, are clearly unexhausted in the state courts. These allegations will be severed in a separate and distinct action, assigned to the undersigned, and dismissed, without prejudice, for failure to exhaust Petitioner's state court remedies or to allege facts sufficient to excuse failure to exhaust. No certificate of appealability will issue. An appropriate Order accompanies this Opinion.

/s/  **Susan D. Wigenton**
**United States District Judge**

Dated: January 8, 2008

---

[16](...continued)
28 U.S.C. § 2253(c)(2).